## I. M. Quin *v.* Martha G. Coleman *et al.*

1. Dower: extent of, when estate insolvent. — Under § 22, art. 164, p. 468, Rev. Code, in cases of insolvency and the death of the husband without children, the widow's dower is only an estate for life, and not a fee-simple.

Appeal from the Chancery Court of Hinds county, 1st District. Hon. John Watts, chancellor.

I. M. Quin *v.* Martha G. Coleman et al.

*D. Shelton* for appellant.

From the facts in this case it is apparent that the important questions involved are :

1. There being no children of D. G. Perryman or descendants of them, and the estate being insolvent, did his widow take a fee-simple which descended to her two sisters, the defendants in error?

2. If she took a fee-simple, was the right of herself, and her said sisters by inheritance from her, paramount to a purchase made under a judgment lien which attached to the land during the life of the husband who owned the land?

To sustain the decree, both these propositions must be answered in the negative. I think I can prove neither of them to be correct.

1. *There being no children of Perryman, and his estate being insolvent, did his widow take a fee-simple estate, or only a life estate?* The fee-simple is claimed under the name of dower. We know the definition of dower to be " the wife's right to a third part of lands whereof the husband was seized during coverture, *to hold to herself during her natural life.*" 2 Black. Com. 129.

Our Code declares as a rule of construction, that all words and phrases used in the statutes shall be construed according to their common meaning, but *technical words and phrases* shall be construed according to their technical meaning. Rev. Code, p. 643. Dower has a technical meaning, and must be so construed, unless a different meaning is shown by the statute.

The statute under which appellees' claim is made is art. 164, p. 468, Rev. Code. I quote it : " When the estate of any testator or intestate shall be represented insolvent, and shall not be sufficient, both real and personal, to pay the debts, the widow of such testator or intestate shall, though there be no children of such testator or intestate or descendants of them, *be endowed* with one-third only of the lands, tenements, and hereditaments of her deceased husband." In this case the estate of David G. Perryman was not only represented, but decreed to be, insol-

vent. It is, therefore, precisely the case contemplated by the article quoted.

Thus isolated, but one meaning can be attached to the article, to wit: that she should be *endowed*, according to the technical meaning of that word — that is, of a third, "*to hold to herself during her natural life.*" But a broader meaning is claimed for appellees, to wit, an estate in fee-simple: that art. 164 is but a limitation of art. 162, reducing the quantity of land, but not the character of estate, to be taken by the wife. This conversion of an independent article applicable to one state of facts, to a limitation of a particular clause of another article applicable to another state of facts, is forced, and not natural. Art. 162 applies to *solvent* estates. The only conflict that could arise under this article would be between the widow and the heirs. Art. 164 applies to *insolvent* estates where the collision, if any, is between the widow and the creditors, the heirs and descendants being entitled to nothing.

Art. 162 fixes the rights under one state of facts; art. 164 under another and different state of facts. Art. 162 controls controversies between one set of litigants; art. 164 between another set. Art. 164 is, therefore, no mere limitation of art. 162, but an independent provision for different controversies founded on totally different rights and between totally different parties.

Art. 164 must be construed by its own terms, and the term *dower* or *endowed*, therein used, has no reference to the clause in art. 162 for its meaning, but must be construed by its legitimate significance — *an estate for life*. This construction harmonizes the several parts of the statute, avoids absurd results, and does justice and equity to all.

Again, take the entire statute (section 22), and every one of the twelve articles thereof, and wherever the word " dower " or " endowed " is used, if it has a meaning more extensive than the common-law definition thereof, the particular clause or sentence in which it occurs expresses and defines the extent of that meaning in unmistakable terms, not leaving its meaning in doubt or uncertainty. When used without such extended

meaning or limitation, the technical meaning is to be given it. It is used in art. 164 without any qualifying term.

2. The second position is, that if the widow in this case take an estate in fee-simple, it is subordinate to the creditor's right to make the land pay Perryman's debts. It is true, in the statute these fee-simple estates are called dower. In Blackstone the various kinds of estates are enumerated and defined: one is an estate in fee-simple, another an estate in tail, another an estate by courtesy, and another an estate in dower. They are all defined, and have separate and distinct meanings. But if an estate in fee-simple be called an estate in tail, it does not make it one; it is still an estate in fee-simple. If an estate in dower is called an estate in tail, it does not make it one; and so if an estate in fee-simple be called an estate in dower, it does not make it such an estate. Courts do not adjudicate causes on mere names, but on the character of the rights conferred; and if a statute create an estate in fee, but call it an estate in dower, tail, or courtesy, the courts will apply the laws of a fee-simple estate to it, without being controlled by the name which the legislature gave it.

*Contended,* — That wherever the statute has given the wife a fee-simple estate, it thereby created her not a tenant in dower, but one of the heirs of the estate, and she takes it by an inheritance created by the statute, and subject to the rights of her husband's creditors.

*Harper & Shelley* for appellant.

There are only two questions presented in this case.

1st. Upon an estate being declared insolvent in the Probate Court, is the widow, if there are no children of the marriage, entitled to one-third of the estate, *in fee-simple,* as dower, under art. 164, p. 468?

2d. In case of the death of the widow before admeasurement of dower, have her heirs-at-law, claiming title by descent alone from her, a right to continue or revive a suit in the Probate Court for the allotment of the dower of the deceased widow? A writ was applied for and granted, called a writ *in the nature*

*of a writ of dower*, something unknown to the common law or our statute. The bill of complainant was filed to enforce his legal claim under the purchase at the execution sale, and not as a formal party.

The Probate Court had no jurisdiction to decide upon his claim of paramount title. *Farmers' & Merchants' Bank* v. *Tappan*, 5 S. & M. 112 ; *James* v. *Rowan*, 6 ib. 393 ; *Holloman* v. *Holloman*, 5 ib. 558 ; *Wane* v. *Washington*, 6 ib. 337.

A Court of Chancery has jurisdiction to enjoin a decree for the allotment of dower. *Moody* v. *Harper*, 38 Miss. 559, which overrules any *obiter dictum* on that point in *Pickens* v. *Willson*, 13 S. &. M. 691.

The appellees found their claim upon the provision of art. 162 and art. 164, 467–8, Rev. Code, which we deny as allowing any such claims as theirs. Such an implication would do violence to all the received rules of construing statutes.

In further support of our position we refer to 2 S. & M. 220.

*T. J. & F. A. R. Wharton* for appellees.

The main question in this case is : Whether the title and interest in these lands, which inured to the widow of D. G. Perryman, constituted an estate in fee-simple, or an estate for life only. We say her interest was an estate in fee-simple. Rev. Code, art. 162 and art. 164, 467–8. He died intestate as to his lands. The paper dated May 25th, 1862, is the last will and testament of Perryman, and cannot be construed as a codicil : being an original last will and testament, it revokes all previous ones. Rev. Code, art. 35, 432 ; *Vining et al.* v. *Hall et al.*, 40 Miss. 83 ; *Hairston et al.* v. *Hairston et al.*, 30 ib. 302. Unless the bequest of the slaves was expressly made in lieu of dower, the widow would not be barred. Rev. Code, art. 168 and art. 170, pp. 468–9. As the estate was insolvent, her renunciation of the will was unnecessary to secure her dower. Ib. *et seq.*, art. 99, 449 ; *Collins* v. *Melton*, 40 Miss. 242 ; *Fulton* v. *Fulton*, 30 ib. 586. In support of our construction of the above statutes, *vide* 6 S. & M. 628 ; 23 Miss. 68 ; 40 ib. 269 ; 1 Kent Com. 462. Statutes should not be so construed as to render

any of their provisions vain and useless (*Marter* v. *O'Brien*, 34 Miss. 21); but should be so construed as to meet the obvious intention of the legislature. 30 Miss. 410; 33 Miss. 103; 35 ib. 17; ib. 25. Our views will become, if possible, more apparent and conclusive by a comparison of this art. 162, Rev. Code, with art. 2, Hutch. Code; and art. 164, Rev. Code, with art. 3, Hutch. Code, p. 622.

The bill of complaint of appellant sought to remove clouds from his title, and relief could not be granted by a Court of Chancery, unless it showed that he was the "real owner" of both the legal and equitable title to the lands. Rev. Code, art. 8, 541; 39 Miss. 796; 8 S. & M. 235.

A party cannot seek aid in a court of equity, unless it is shown that he has not relief at common law. 30 Miss. 177. Appellant was a party to the proceedings in the Probate Court; he should have appealed to this court. Rev. Code, art. 28, 430. At most, a Court of Chancery can only enjoin so much of a decree for the assignment of dower as might direct the widow or her heirs to be put into possession, as against a party claiming a paramount title. 13 S. & M. 691; 31 Miss. 611; 35 ib. 63. Again, the decree of the Chancery Court was correct, because of a misjoinder of defendants in the bill. Story's Eq. Plea., §§ 271, 279, and 544; 38 Miss. 182.

JEFFORDS, J., delivered the opinion of the court.

This is a bill in chancery filed by Irvin M. Quin, the appellant, against A. R. Green, executor of David G. Perryman, deceased, S. B. Thomas, sheriff of Hinds county, Martha G. Coleman, Livingston Mims, Washington Marshall and Mary A. B. Marshall, his wife, Zaccheus Hills, Frank Dunn, and James Goode, for the purpose of quieting the title to certain lands claimed to have been purchased by Quin, at sheriff's sale. It is alleged that David G. Perryman died in July, 1864, leaving a will, and leaving a widow, but no child or children, nor descendants of any child or children; that Green, the executor, reported the estate of Perryman to be insolvent, and asked for an order to sell the real estate to pay debts.

The widow answered the petition of the executor, demanding that *one-half* of the real estate should be assigned to her *in fee-simple, as her dower.*

It appears that there were two incumbrances on the lands of which Perryman died seized. Frank Dunn held a deed of trust upon two hundred and forty (240) acres of the lands mentioned in the petition of the executor, given to secure the payment of about one thousand dollars.

The appellant, Irvin M. Quin, obtained a judgment in the Hinds County Circuit Court against the testator, David G. Perryman, during his lifetime, for about the sum of four thousand dollars, which was a lien upon the lands of the testator. During the pendency of these proceedings, and before the assignment of dower was ordered, the widow died. It is proper to state, although it has no bearing upon the decision of this case, that Frances E. Perryman intermarried with Dr. Coker, and was his wife at the time of her death. The death of the widow was suggested, and the suit revived against the heirs and legal representatives of the widow, who appeared, and claimed that they were entitled by inheritance from her to one-half of the lands in question in fee-simple. These claimants are Martha G. Coleman and Mary A. B. Marshall, sisters of the widow of David G. Perryman. At the March Term, 1867, of the Probate Court of Hinds county, the estate of David G. Perryman was adjudged to be insolvent, and a writ of dower was issued in favor of the widow's heirs, directing the assignment of dower to them; that it should include the dwelling-house, etc.; that they should be put in possession by the sheriff; and that the executor should sell the balance of the lands to pay debts. The persons in whose favor the order assigning dower was made were the sisters of the widow, but of no kin to David G. Perryman. On the 3d day of July, 1866, and during the lifetime of the widow, the appellant sued out a *scire facias* to revive his judgment against the testator, making the executor, widow, the heirs of David G. Perryman, and the terre-tenants parties to said proceedings; and did on the 19th day of November, 1866, obtain a judgment of revivor against said parties. On the

19th day of January, 1867, execution was issued and levied on the lands belonging to the estate of David G. Perryman, deceased, and having been duly advertised, were sold to the appellant on the first Monday and 4th day of March, 1867, for the sum of one thousand dollars. The assignment of dower was made on the 7th day of March, 1867. These are the substantial and material facts of this case.

The bill concludes with a prayer that the executor, the sheriff of Hinds county, and the heirs of the widow be perpetually enjoined from executing the decree of the Probate Court ordering the assignment of dower and sale of the residue of said lands, and also praying that the title of the appellant to said lands be quieted by decree of the Chancery Court. To this bill the heirs of the widow demurred, which demurrer was sustained, and the bill dismissed. From the decree dismissing the bill this appeal was taken. Two questions are presented for our consideration :

1. There being no children of D. G. Perryman, or descendants of them, and the estate being insolvent, did his widow take a *fee-simple* which descended to her two sisters, the defendants in error?

2. If she took a fee-simple, was the right of herself, and her said sisters by inheritance from her paramount to a purchase made under a judgment lien which attached to the lands during the life of the husband who owned the lands?

The determination of the first proposition involves directly a construction of § 22, art. 164, p. 468, Revised Code.

Many rules have been cited in the brief of counsel for appellees, as applicable to the construction of statutes. One or two of the most common and familiar will answer our purpose on the present occasion.

The rule is almost universal, unless otherwise expressly provided by the terms of the statute, that all statutes in derogation of the common law shall be strictly construed. Another rule is, to look to the *old law, the mischief* and the remedy. It is argued by counsel for appellees, that the provisions of art. 162, p. 467, must control the construction of art. 164, and

that any other view of this subject will produce conflict and repugnancy between these provisions. We differ with counsel on this point. The first part of art. 162 establishes the common-law rule, and gives one-third of the husband's lands to the widow for and during her natural life, and in addition such other lands as "he had before conveyed, otherwise than in good faith, etc. ;" and provides for the manner in which the assignment shall be made. This part of the section evidently contemplates the existence of children, to whom the estate of the decedent must descend. This is manifest, for the reason that the second part of the same section provides, "but if there be no child or children of such testator or intestate, nor descendants of them, then the widow shall have, as her dower, one-half of the real estate, as aforesaid, in fee-simple." It is contended by counsel for the appellant that this section was intended to apply to estates which are solvent. We entertain no doubt but that this view is correct. Article 164 provides that "when the estate of any testator or intestate shall be represented insolvent, and shall not be sufficient, both real and personal, to pay the just debts, the widow of such testator or intestate shall, though there be no children of such testator or intestate, or descendants of them, be endowed with one-third only of the lands, tenements, and hereditaments of her deceased husband."

It is urged on the part of the appellees, that under this section, when the estate, real or personal, of the testator or intestate shall not be sufficient to pay his just debts, it was the intention of the legislature to confer an estate *in fee-simple*. It is claimed that this section must be construed in connection with and as part of article 162, and that the meaning of this article is that the widow shall take in fee-simple, instead of an estate for life.

On the other hand it is contended, that where the estate is *insolvent* the widow is remanded to her common-law right of dower, and is only entitled to an one-third interest for and during her natural life. It appears clear and manifest to us that the two articles treat of entirely distinct and different

cases, and that the rules cited and laid down for our guidance in the construction of repugnant and conflicting statutes do not apply. We have failed to discover wherein these sections conflict. Not only this, but on the contrary, we are of opinion that they are easily reconcilable with each other.

The *old* law was very similar to the present statute. It provided that where there was "no child or children or descendants of them, then the widow shall have as her dower one-half of his real estate, as aforesaid, for and during her natural life." Hutch. Code, § 1, art. 2, p. 621. See also § 81, art. 3, p. 622. Sec. 81 of Hutchinson's Code is literally the same as art. 3 of the present Code. The *mischief* of the old law was, that when the husband died without children, leaving his estate solvent, his widow took one-half of his real estate *for and during her natural life only*. The *remedy* introduced into the *new law* gives it to her absolutely *in fee-simple*. This change is most important, and really the only important difference between the *old* and *new* law. The reason for this change is perfectly patent, and was conceived in a most commendable and liberal spirit. It seems to us it was eminently wise, proper, and just, that where the testator or intestate left his estate solvent, without leaving any "child or children, or descendants of them" to inherit it, that the wife of his choice should have a larger share of his real estate than was allowed her by the common law. The tender and sacred relations of husband and wife not only justified the legislature in increasing the quantity of her allowance, but fully warranted it in enhancing its quality by giving it to her, with the power of disposing of it by deed or will, instead of being limited to its use during her life, and at her death to go to her heirs instead of the heirs of her husband. We can see no injustice or hardship in the adoption of such a rule.

Where the husband dies leaving children, the wife takes her one-third for life only, as at common law ; and as to this class of cases no question or complaint is made. It is admitted that the children, under any and all circumstances, take subject to the debts of the father. It is insisted on behalf of the appellees, that where the husband dies without children, leaving his estate

insolvent, that the widow is entitled to one-third of the husband's real estate in fee-simple as her dower. It is not and cannot be claimed that this is done by express words, but that such may and should be implied from the statute. If this be the correct construction of the third article, the heirs of Mrs. Perryman, although not of kin to her husband, would be placed in a more favorable position than the own children of her husband. Under this construction, if the husband dies insolvent, leaving children, his widow only takes one-third interest for life, and his children do not get a single cent until all the debts of the testator or intestate have been paid ; but if the husband dies without leaving children, and his estate is represented insolvent, his wife is entitled to one-third of his real estate in fee-simple, placing the widow without children in a better position than one with a dozen children to support, and thereby also placing the heirs of the widow in a more favorable condition than the heirs of the decedent. The children are obliged to give way to creditors ; they are compelled to yield up the last farthing of their father's estate to the payment of his just debts, but entire strangers to his blood may inherit one-third of all his real estate ; his own offspring may be reduced to beggary and want, whilst his wife's relations may be elevated to wealth and luxury. We cannot bring ourselves to the belief that the legislature ever for a moment intended to do a thing so manifestly unreasonable and so grossly unjust. The terms " dower " and " endowed " have a clear and well-defined meaning and legal significance, and when used by the legislature we are bound to presume that it knew their import, and intended to, and did, use them in a technical sense. This rule is laid down for our guidance by the Code, chap. 64, art. 1, p. 643. It must be presumed that when the legislature attempts to innovate upon the common law, it will prescribe the limit and define the extent of such contemplated alteration. Had the legislature intended to change the common law with reference to the class of cases now under consideration, it would have been an easy matter to have said so in express terms ; and having failed to do this, we are forced to the conclusion, that such was not the intention of

the legislature. Under the old law, as we have seen, the widow was entitled to *one-half* of her husband's estate where he died without children and the estate was *solvent,* and *one-third,* when *insolvent,* for and during her natural life. The legislature saw fit to *change* the law, giving her one-half in fee-simple, when the estate is solvent, where there are no children. When the estate is *insolvent,* and there are no children, the legislature re-enacted the old law without *modification* or *change.* We confess we are unable to understand by what system of logic it can be maintained that the meaning of a law has been changed when the law itself remains unaltered. According to our view of this subject, the two sections under consideration were intended to apply to two separate and distinct state of facts. One they have altered; the other remains untouched, and as we believe for the most satisfactory reasons. We are therefore of the opinion, for the reasons stated in this opinion, that the widow in that class of cases mentioned in the third section is entitled to one-third of her husband's real estate for and during her natural life only, and not *in fee-simple.* This view of the subject renders it entirely unnecessary for us to consider the second assignment.

The decree of the court below dismissing the bill will be reversed, and cause remanded for further proceedings in accordance with the principles of this opinion.